UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                       :

STANLEY RUBENSTEIN, Derivatively on   :
Behalf of Nominal Defendant JEFFERIES   :
FINANCIAL GROUP INC.,                  :
                                         :
                *Plaintiff,*            :
                                         :          20-CV-2775 (PAC)
       *-against-*                  :
                                         :          **AMENDED**
LINDA L. ADAMANY, BARRY J.            :          **OPINION & ORDER**
ALPERIN, ROBERT D. BEYER,             :
FRANCISCO L. BORGES, W. PATRICK   :
CAMPBELL, PAUL M. DOUGAN, BRIAN  :
P. FRIEDMAN, MARYANNE GILMARTIN, :
RICHARD B. HANDLER, ALAN J.          :
HIRSCHFIELD, JAMES E. JORDAN,      :
ROBERT E. JOYAL, JACOB M. KATZ,    :
JEFFREY C. KEIL, MICHAEL T. O'KANE,  :
JESSE CLYDE NICHOLS, III, STUART H.  :
REESE, MICHAEL SORKIN, JOSEPH S.   :
STEINBERG,                               :
                                         :
               *Defendants,*          :
                                         :
JEFFERIES FINANCIAL GROUP INC.,    :
                                         :
           *Nominal Defendant.*    :
                                         :
------------------------------------------------------------X

       Plaintiff Stanley Rubenstein, a shareholder of Jefferies Financial Group Inc. ("Jefferies" or

the "Company"), alleges that three senior officers (the "Officers") and the board of directors (the

"Board") issued materially false proxy statements in violation of Section 14(a) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78n, and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated

thereunder.  Plaintiff claims these proxy statements omitted critical information about allegedly

excessive personal use of the Company's corporate aircraft program.

Defendants have moved to dismiss the sole remaining Section 14(a) claim. Because the Court concludes the Amended Complaint does not adequately plead loss causation, the Court **GRANTS** the motion to dismiss.

## BACKGROUND

### I.     Factual Background

The Court articulated the underlying factual background in its Order dismissing the Plaintiff's original complaint and reiterates that factual background here. *Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*, 532 F. Supp. 3d 154, 169 (S.D.N.Y. 2021) *aff'd in part, vacated in part, remanded*, No. 21-905-CV, 2021 WL 5782359 (2d Cir. Dec. 7, 2021).

Plaintiff is a citizen of Alabama who has held shares in Jeffreies since 2017. Am. Compl. ¶ 11, ECF No. 25. Jefferies is diversified holding company, existing under the laws of New York, that "owns a diverse range of businesses" including those providing financial services." *Rubenstein*, 532 F. Supp. 3d at 158. Plaintiff alleges that at all relevant times, Jefferies owned a fleet of three corporate jets. Am. Compl. ¶ 47. In 2011, another Jefferies shareholder made a demand for the Company's books and records. *Id.* ¶ 48. In response, the Board ratified a one-page jet usage policy to regulate use of the corporate fleet. *Id.* ¶ 49. The policy allowed the directors and officers use of the jets but required that the cost of private usage be "remitted back to the Company." *Rubenstein*, 532 F. Supp. 3d at 158.

Plaintiff alleges that "[s]ince at least 2015, Jefferies and its Board have permitted the Company's senior executive officers to make extensive personal use of the Aircraft that far exceeded what could reasonably be justified under the Company's Jet Usage Policy and Code of Business Practice." Am. Compl. ¶ 52. He further alleges that non-employees were permitted to use the jet unaccompanied and for personal reasons, and that the Jefferies books and records

mischaracterized numerous flights as "business" flights. *Id.* ¶¶ 65, 71. These unauthorized flights, according to Plaintiff, were executive compensation that was misstated on the proxy sheets between 2017 and 2020. *Id.* ¶¶ 80–85.

In 2018, Plaintiff demanded that the Board investigate and take action. *Id.* ¶ 109. After a Special Committee of the Board uncovered documents that revealed "nearly 70% of total Aircraft use constituted personal use by the Officer Defendants," *id.* ¶ 110(a), the Board declined to take action to curtail the personal use of the fleet. *Id.* ¶ 111. On these allegations, Plaintiff asserts that the Board "failed to oversee compliance with the Company's policies, including its Jet Usage Policy." *Id.* ¶ 114. Plaintiff commenced this derivative action on April 2, 2020. ECF No. 1. "The gravamen of Rubenstein's lawsuit is that the Officers grossly abused the Flight Program for their personal use, and that the Board failed to adequately monitor and investigate such wrongdoing, in breach of their fiduciary duties." *Rubenstein*, 532 F. Supp. 3d at 160.

## II.    Procedural Background

Plaintiff's original complaint alleged breaches of fiduciary duties, corporate waste, and unjust enrichment under New York law, as well as a claim under Section 14(a) of the Securities Exchange Act. *See generally* Original Compl. at pp. 40–53, ECF No. 5.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants moved to dismiss the complaint in June 2020. *See* ECF Nos. 6, 7. This Court granted the motion and dismissed, with prejudice, both the state law claims and the Section 14(a) claim. *Rubenstein*, 532 F. Supp. 3d at 169. The Court held that the Business Judgment Rule precluded Plaintiff's recovery on his state law claims. *Id.* at 165–168. As to Plaintiff's Section 14(a) claim, the Court—relying on *Witchko v. Schorsch*, No. 15 CIV. 6043, 2016 WL 3887289, at *7 (S.D.N.Y. June 9, 2016)—determined that Plaintiff failed to allege loss causation. *Id.* at 169.

Plaintiff appealed, and in a December 2021 summary order, the Second Circuit affirmed in part and vacated in part.  The Second Circuit affirmed this Court's dismissal of Plaintiff's state law claims, *Rubenstein on Behalf of Jefferies Fin. Grp. Inc. v. Adamany*, No. 21-905-CV, 2021 WL 5782359, at *2 (2d Cir. Dec. 7, 2021), but vacated and remanded with respect to the Section 14(a) claim, *id.* at *4.  While the Second Circuit noted that "it is not clear . . . whether Rubenstein has adequately alleged loss causation," *id.*, it remanded the Section 14(a) claim because this Circuit has "sanctioned claims under section 14(a) where the plaintiff alleged that misleading statements related to director compensation in a company's proxy materials led to the election of board members." *Id.*  The Second Circuit then directed this Court to "consider these precedents"—in tandem with *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)—"in deciding whether the complaint alleges loss causation." *Id.*  Accordingly, the Court considers this most recent motion to dismiss consistent with these directions.

On remand, Defendants again moved to dismiss the Section 14(a) claim.  ECF No. 21. Plaintiff then filed an amended complaint (the "Amended Complaint"), alleging two new theories of loss causation and abandoning the one presented to the Second Circuit.  ECF No. 25.[1] Defendants then filed another motion to dismiss—their third—in March 2022, ECF No. 28,[2] arguing Plaintiff has failed to plead both materiality and causation.[3]

---

[1] Under Plaintiff's original theory of loss causation, "had the proxy statement accurately portrayed the cost of the abuse of the Flight Program, Jefferies's board would have lost reelection, which would have had the result of ending or reducing the practice of excessive personal travel on company airplanes." *Rubenstein*, 2021 WL 5782359, at *3.

[2] *See* Defs.' Mem., ECF No. 29; Pl.'s Opp'n, ECF No. 31; Defs.' Reply, ECF No. 32.

[3] Defendants note the Amended Complaint continues to name defendant directors who only served prior to 2017—even though this Court held that Plaintiff did not have standing to sue for conduct that occurred before March 2017.  Defs.' Mem. at 2.  For the avoidance of doubt,  defendants Dougan, Hirschfield, Jordan, Nichols, and Sorkin remain dismissed from this action.

4

## DISCUSSION

### I. Legal Standards

#### A. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Mere "labels and conclusions, and a formalistic recitation of the elements of a cause of action" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "When adjudicating a motion to dismiss, the Court 'accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor.'" *Barenbaum on behalf of FTE Networks, Inc. v. Palleschi*, No. 19-cv-05913, 2020 WL 5819810, at *6 (S.D.N.Y. Sept. 30, 2020) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

#### B. The Section 14(a) Claim

Rule 14a-9, promulgated under Section 14(a) of the Securities Exchange Act, prohibits proxy statements which are "false or misleading with respect to any material fact, or which omit[] to state any material fact necessary in order to make the statements therein not false or misleading." 7 C.F.R. § 240.14a-9. To state a claim under Section 14(a), a plaintiff must allege that "(1) a proxy statement contained a material misstatement or omission, which (2) caused plaintiff['s] injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x. 772, 773 (2d Cir. 2004). At issue in this case is whether Defendants' alleged omission caused Plaintiffs' injury.

5

## II.    Plaintiff Does Not Adequately Plead Causation

Plaintiff's newest formulation of his sole remaining claim fails because he has not adequately pled loss causation under Section 14(a).  In his Amended Complaint, Plaintiff offers two theories of loss causation: (1) shareholders were deprived of their "say-on-pay" rights because they approved the compensation for the Officer Defendants based on inaccurate proxy statements; and (2) the shareholder elections of the Director Defendants were "tainted and defective" because those Directors "approved and awarded" compensation to the Officer Defendants without disclosing it to the shareholders.  The Court considers—and rejects—each theory in turn.

### A.    The "Say-on-Pay" Theory

First, Plaintiff alleges that the "inaccuracies and omissions" in the relevant proxy statements caused shareholders like him to "approve[] the compensation of the Officer Defendants, including the perquisite by which the Officer Defendants were permitted to use the Aircraft for personal purposes, and the annual $350,000 allowance for personal use . . . ."  Am. Compl. ¶ 164.  Plaintiff thus claims he was deprived of his "say-on-pay" right under the Dodd-Frank Wall Street Reform and Consumer Protection Act.  *See* 15 U.S.C. § 78n-1 ("Not less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives.").

Plaintiff concedes the votes on executive compensation were advisory and thus not binding on Jefferies.  *See* Am. Compl. ¶¶ 94–95, 165.  Accordingly, Defendants contend—and the Court agrees—the statements could not have caused shareholders to approve any executive

compensation package (and thus suffer a loss) for one simple reason: the outcome of the shareholder vote on the executive compensation packages had no actual effect on those packages.

Plaintiff's theory of causation is foreclosed by binding precedent. In *Virginia Bankshares, Inc. v. Sandberg*, the Supreme Court held that any causation theory based on a non-binding, "cosmetic" vote would be "hazy," and the resolution would be "unreliable." 501 U.S. 1083, 1105–06 (1991). Lower courts have echoed these concerns, holding that, as a general rule, plaintiffs may not plead causation where their votes would not have changed an outcome. For example, in *Grace v. Rosenstock*, the Second Circuit applied the principle from *Virginia Bankshares*, holding that a minority shareholder could not plead causation where his votes were not necessary to approve a merger. 228 F.3d 40, 47–49 (2d Cir. 2000). Other courts in this Circuit have applied this same logic. *See, e.g.*, *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 396 (S.D.N.Y. 2011) (causation not adequately plead where approval of a merger was a "foregone conclusion"); *cf. Koppel v. 4987 Corp.*, 167 F.3d 125, 137 (2d. Cir. 1999) (noting problems with "speculative nature" of claims where non-binding, minority approval of corporate action is not required).

Plaintiff argues, however, that the Second Circuit has recognized a narrow exception to the *Virginia Bankshares* rule, and that this case fits squarely within that exception. Specifically, Plaintiff tries to equate the alleged loss of his "say-on-pay" right with the loss of state appraisal rights, the latter of which the Second Circuit recognized was a sound basis for a theory of causation under Section 14. *See Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 930 (2d. Cir. 1992).

*Wilson* is inapposite here. Plaintiff has not identified—nor has the Court found—any case extending the *Wilson* exception beyond the loss of a state law remedy, let alone to the loss of a federal "say-on-pay" right. *See, e.g.*, *Thouret v. Hudner*, No. 95 Civ. 1793, 1996 WL 38824, at *2 (S.D.N.Y. Feb. 1, 1996) (confining availability of *Wilson* to minority shareholders who "have

given up state law remedies"). Without any supporting authority, Plaintiff must rely on blanket assertions that the "say-on-pay" right "mattered to the Company and its Board" and that there is "no difference" between the loss of state appraisal rights and the loss of "say-on-pay" rights. Pl.'s Opp'n 22; Am. Compl. ¶ 95.

But that is not so. State appraisal rights are fundamentally different than "say-on-pay" rights. For one, a shareholder who cannot exercise appraisal rights may suffer economic harm. Plaintiff, however, alleges no such economic harm. Nor do "say-on-pay" rights "impose, create or imply any additional fiduciary duties." 15 U.S.C § 78n-1(c)(3). State appraisal rights, on the other hand, serve as the sole remedy for a minority shareholder who otherwise would be powerless to affect the outcome of a merger. *See Wilson*, 979 F.2d at 931. Further, state appraisal rights give shareholders substantive rights—including the right to cash out—that extend well beyond casting a vote. Extending the exception for state appraisal rights recognized in *Wilson* to claims like Plaintiff's would allow exceptions to swallow the rule that causation theories rooted in non-binding votes are too speculative. Ultimately, the upshot of *Virginia Bankshares* remains fatal to Plaintiff's "say-on-pay" theory: "threats of speculative claims and procedural intractability are inherent in a theory linked through . . . a cosmetic vote." 501 U.S at 1085.

## B.    The "Tainted Election" Theory

Plaintiff's second theory—that the director elections were "tainted and defective" and "should be nullified"—is similarly unsound. The relevant terms of the Directors— for the years following the allegedly inaccurate proxy statements, 2018–2021—have expired.[4] With the relevant terms now complete, Plaintiff's election theory is moot.

---

[4] In light of ECF No. 35 filed by Defendants, the Court revises its Opinion pursuant to Rule 60(a) of the Federal Rules of Civil Procedure to state more accurately that the terms of the Directors

"Where [a] plaintiff challenges the solicitation of proxies for the election of directors to a term now complete, courts addressing the question of mootness have looked to the nature of the relief sought." *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 955 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984). "[A] mere declaration of law without implications for practical enforcement upon the parties" is not a sufficient basis for maintaining an action. *Id.* (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 817 (2d Cir. 1975)). The Second Circuit has cautioned against finding loss causation where the terms of the directors at issue have expired. *See, e.g., Maldonado v. Flynn*, 597 F.2d 789, 797 n.10 (2d Cir. 1979) (*Maldonado II*) (holding that the question of validity of election mooted by expiration of term); *cf. Galef v. Alexander*, 615 F.2d 51, 66 n.23 (2d Cir. 1980) (noting potential mootness problem where terms of directors had expired).[5]

Perhaps recognizing the mootness problem posed by the end of the directors' terms, Plaintiff's Amended Complaint has added requests for injunctive relief and for disgorgement of

---

have expired, rather than that the Directors are no longer on the Board. *See Avis Budget Car Rental, LLC v. JD2 Env't, Inc.*, No. 12-CV-5010, 2016 WL 3248328, at *4 (E.D.N.Y. June 13, 2016). This revision does not alter the Court's initial ruling that Plaintiff's tainted election theory is moot, as the last term allegedly connected to a misleading proxy statement expired in 2021. ECF No. 35. Thus, no Director is currently serving a term where they were elected by an allegedly misleading proxy statement. *Maldonado v. Flynn*, 597 F.2d 789, 797 n.10 (2d Cir. 1979) (holding where "[t]he terms of those elected [to the Board] . . . have *expired*," it "render[s] moot the question of the validity of that election" (emphasis added)).

[5] Second Circuit precedent differs from—and therefore is inapplicable to—this present action in other ways, too. For example, Plaintiff asserts that cases like *Galef, Maldonado II*, and *Weisberg v. Coastal States Gas Corp.*, 609 F.2d 650 (2d Cir. 1979), support his argument that "misleading proxy statements may cause shareholders to vote out not just those directors who receive the compensation at issue, but also those directors who voted to award the compensation." Pl.'s Opp'n 24. But the Amended Complaint does not allege that other directors would have been voted out because of their votes on executive compensation, so Plaintiff's argument remains disconnected from both the facts he alleges and the case law on which he relies.

compensation from those directors whose terms expired. *See* Am. Compl. at 60 (Prayer for Relief

(c)–(d)).  As to the request for injunctive relief, Plaintiff relies on *Seibert v. Sperry Rand Corp.*,

586 F.2d 949 (2d Cir. 1978), for the proposition that a Section 14(a) claim is not moot where a

plaintiff seeks injunctive relief that would apply to future proxy statements.  It is true that in some

cases, a district court may well issue an injunction "applicable to future, as well as past, elections."

*Id.* at 951.  But the Amended Complaint expressly confines itself to proxy statements issued from

2017 to 2020—and does not request relief related to future proxy statements.[6]  *See* Am. Compl. at

60 (Prayer for Relief (g)).  Nullifying past is exactly the type of empty declaration that courts in

this Circuit routinely reject.  *See Sanders*, 582 F. Supp. at 956 ("A determination by this Court that

the elections in question contravened the proxy solicitation requirements of § 14(a) would be a

mere declaration of law, a finding insufficient to ground this Court's assumption of jurisdiction.")

(internal citations and quotations omitted); *cf. Enzo*, 2021 WL 4443258 at *5 (finding injunctive

relief an appropriate remedy where plaintiff sought to enjoin future violations of Section 14(a)).[7]

Plaintiff further asserts that *Maldonado v. Flynn*, 477 F. Supp. 1007 (S.D.N.Y. 1979)

(*Maldonado III*), supports his claim that disgorgement of compensation the directors earned saves

his claim. Pl.'s Opp'n 19.  *Maldonado III*, however, held the opposite: there, the court concluded

that recovery of directors' fees is not a cognizable remedy under Section 14(a).  The court noted

---

[6] Defendants note a serious possibility that Plaintiff's claims with regards to the 2017–2019
statements are time-barred. *See* Defs.' Br. 20 n.9 (asserting that Plaintiff made a litigation demand,
and thus was aware of the alleged conduct, in March 2018). The Court again need not address the
timeliness issue because the Amended Complaint does not adequately plead a Section 14(a) claim.

[7] Plaintiff further invokes *Enzo* to argue that the Court should defer ruling on the mootness issue
until discovery is completed. *See* Pl.'s Opp'n 18. As an initial matter, the mootness argument in
*Enzo* was grounded in Article III doctrine. Defendants here are not raising a constitutional
argument, but rather argue that the expiration of the directors' terms means Plaintiff cannot plead
loss causation. *See* Defs.' Reply 9.

that "[i]f any damages are warranted in an improper election case, they are limited to out-of-pocket losses attributable to the improper election." 477 F. Supp. at 1010. That is because "[e]ven had the directors, whose acts are under challenge, not been elected, others would have been functioning and fees would have been payable to them." *Id.* The *Maldonado III* court noted that equitable relief would be appropriate in election cases, *id.*, but injunctive relief is not appropriate in cases where, as here, it would serve no purpose. Thus, adding requests for injunctive relief and disgorgement cannot resuscitate Plaintiff's Section 14(a) claim.[8]

## CONCLUSION

The Amended Complaint fails to state a claim under Section 14(a). Because amendment would be futile, *see Document Techs., Inc. v. LDiscovery, LLC*, 731 F. App'x 31, 33 (2d Cir. 2018), the Court **GRANTS** the motion to dismiss.

The Clerk of Court is directed to terminate the motions at ECF Nos. 21 and 28 and close this case.[9]

Dated: New York, New York
October 5, 2022

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

---

[8] To support his claim for disgorgement, Plaintiff again cites *Enzo*, where this Court held that the plaintiff had pleaded loss causation by alleging that the company spent unnecessary resources on a proxy contest. *See* Pl.'s Opp'n 19. Unlike the *Enzo* proxy contest, which may never have taken place if not for the misleading proxy, *see* 2021 WL 4443258 at *9, the elections here take place each year without fail. Thus, the allocated money would have been spent anyway, meaning Jefferies suffered no out-of-pocket loss.

[9] Defendants' renewed motion to dismiss the original complaint, which is no longer the operative pleading in this case, is denied as moot. ECF No. 21.